# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:17-cv-00706-RBJ

**WENDUO GUO,** Derivatively on Behalf of CLOVIS ONCOLOGY, INC.,

   Plaintiff,

v.

**PATRICK J. MAHAFFY, et al.,**

   Defendants,

and

**CLOVIS ONCOLOGY, INC.**, a Delaware corporation,

   Nominal Defendant.

## DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Defendants Patrick J. Mahaffy, Daniel W. Muehl, Gillian C. Ivers-Read, M. James Barrett, Brian G. Atwood, James C. Blair, Paul H. Klingenstein, Edward J. McKinley, Thorlef Spickschen, Keith T. Flaherty, Ginger L. Graham, Erle T. Mast, Andrew R. Allen, and nominal defendant Clovis Oncology, Inc. ("Clovis" or the "Company") respectfully move this Court for an order, pursuant to Federal Rules of Civil Procedure 12(b)(6) and (3), dismissing the Second Amended Complaint dated February 7, 2020 (the "Complaint").

### PRELIMINARY STATEMENT

This derivative case was filed in the wrong forum. The thrust of the Complaint is that the Clovis board of directors failed to properly oversee clinical trials for an experimental oncology drug called "rociletinib" (or "roci"), authorized or permitted false securities disclosures about

roci's efficacy and safety, and engaged in other acts of corporate mismanagement. On this basis, Plaintiff brings a claim for breach of fiduciary duty, governed by Delaware law, against current and former directors and officers of Clovis, a Delaware corporation.

But this is precisely the same case being litigated in a first-filed, further advanced consolidated derivative action pending in the Delaware Court of Chancery. That case was filed in Delaware for a good reason: Clovis' charter mandates that derivative cases like this one *must* be filed in Delaware. Plaintiff now concedes that his fiduciary duty claim cannot be litigated here on a standalone basis. And notably the core predicate acts for the derivative claim—the allegedly false statements about roci's response rate and side effects—were the subject of a prior lawsuit (*Medina*) in this Court before Judge Moore that settled in 2017.

As such, this entire case now rises or falls with Plaintiff's tag-along proxy claim under Section 14(a) of the Securities Exchange Act of 1934. The Complaint here is prolix, spanning some 116 paragraphs across fifty-five pages, but just ten paragraphs are devoted to alleged misstatements and omissions of the Proxy (defined below). (*See* ¶¶ 14, 79–82, 105–109.) In stark contrast to the *Medina* case, however, the Complaint does not allege that the Proxy said *anything* misleading about roci — for instance, that the drug had a "response rate" of 60%, was "well tolerated," or was on track for FDA approval. Nor does the Complaint allege that the Proxy included affirmative misrepresentations about FDA or securities law compliance. Instead, the Complaint simply alleges that the directors failed to affirmatively disclose their own misdeeds and "misleadingly suggested" that Clovis was being run in a compliant manner. (¶ 81.) If that "bootstrap" theory of a securities violation sounds convoluted, that is because it is.

More precisely, Plaintiff cites a litany of alleged acts of corporate mismanagement that the Proxy purportedly failed to disclose, such as allegations that Clovis was "noncompliant" with FDA requirements or presenting false data. However, the Complaint struggles to connect these purported omissions to anything Clovis *actually said* in the Proxy. That is where the claim collapses: Plaintiff fails to identify even a single statement in the Proxy that was rendered misleading by the failure to disclose these allegations. And as a generation of cases following the Supreme Court's decision in *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462 (1977) has confirmed, it is not enough to plead that the proxy omitted alleged mismanagement or breaches of duty. Further, the Complaint seeks money damages under Section 14(a), but fails to plead that the Proxy directly authorized the loss-generating corporate action. That too is fatal.

It boils down to this: Plaintiff alleges that Clovis told investors (but not in the Proxy) that roci had a response rate of 60% and was well tolerated when the response rate was much lower and the drug had serious side effects; the board authorized or permitted those disclosures and failed more generally to exercise oversight; and this was not disclosed in the Proxy. But the securities claim was settled in the *Medina* case; the derivative claim is actively being litigated in the Delaware Court of Chancery pursuant to a mandatory forum selection provision; and the proxy claim, simply bootstrapping the other two claims, does not state a claim at all. Accordingly, the case should be dismissed with prejudice as to the Section 14 claim and with leave to refile in Delaware as to the breach of fiduciary duty claim where it would likely be consolidated with the ongoing already-consolidated derivative case.

# STATEMENT OF FACTS[1]

## I. The Parties.

Clovis is a biopharmaceutical company headquartered in Boulder, Colorado. Clovis was founded in 2009 and focuses on acquiring, developing, and commercializing oncology products. (¶ 2.)[2] During the relevant period, Clovis had three anti-cancer candidates under development, including roci, which was under review as a potential treatment for lung cancer. (¶ 3.)

On March 20, 2017, the date Plaintiff filed his initial complaint, Clovis' Board consisted of nine directors, all of whom have been named as defendants in this action: Brian G. Atwood; M. James Barrett, Ph.D.; James C. Blair, Ph.D.; Keith T. Flaherty, M.D.; Ginger L. Graham; Paul H. Klingenstein; Patrick J. Mahaffy (also President and Chief Executive Officer); Edward J. McKinley; and Thorlef Spickschen. (*See* ¶¶ 14, 21, 24–31.) Plaintiff also brings breach of fiduciary duty claims against the following individuals: Daniel W. Muehl (Chief Financial Officer), Gillian C. Ivers-Read (Chief Regulatory Officer), Andrew R. Allen (former Chief Medical Officer), and Erle T. Mast (former Chief Financial Officer). (*See* ¶¶ 21–23, 32–33.)

## II. Rociletinib and the Proxy Statement.

The drug at issue in this litigation is roci, intended for the treatment of lung cancer. (¶ 3.) In hopes of ultimately receiving FDA approval, Clovis sponsored a series of clinical trials for roci. (*See* ¶ 4.) A key measure of efficacy in clinical trials is known as the objective response rate ("ORR"). (¶ 4.) Plaintiff alleges that during the clinical trials in 2014 and 2015 Clovis reported an "unconfirmed" ORR for roci when a "confirmed" ORR was purportedly required (¶

---

[1] The well-pleaded allegations of the Complaint are accepted as true solely for the purposes of this Motion.
[2] Unless otherwise noted, references to paragraph numbers are to the Complaint.

68); on November 16, 2015, Clovis disclosed that the FDA informed Clovis that the FDA's efficacy analysis would focus solely on confirmed responses (¶ 83); and when Clovis transitioned to a confirmed response rate, the ORR decreased from approximately 60% to less than 30% (¶ 6). Plaintiff further alleges that Clovis failed to disclose potentially serious side effects of roci. (¶¶ 62, 87.)

On April 30, 2015, seven months before Clovis' November 2015 disclosure, Clovis submitted a Proxy Statement on Schedule DEF 14A in connection with the 2015 Annual Meeting of Stockholders held on June 11, 2015 (the "Proxy") (¶ 70.) At the time, three Clovis directors—Barrett, Mahaffy, and Spickschen—were up for re-election. (¶ 70.) The Proxy included background on the Board's role in risk oversight, the Board's committees, and executive compensation. (¶ 80.) Critically, the Proxy did not include any representations regarding roci's response rate or side effects.

### III. Aftermath.

Following Clovis' regulatory announcement in November 2015, Clovis and certain of its current and former executives were named in various securities lawsuits, the largest of which was a consolidated class action in the District of Colorado, captioned *Medina v. Clovis Oncology, Inc., et al.*, No. 1:15-cv-02546-RM-MEH. The *Medina* plaintiffs alleged that Clovis misrepresented roci's ORR and safety profile in securities filings and public presentations — statements that were not repeated in the Proxy. The parties settled the *Medina* litigation on October 26, 2017. (¶ 11.)

On May 18, 2017, certain Clovis stockholders filed a derivative action in the Delaware Court of Chancery, asserting, among other things, claims for breach of fiduciary duty. *In re*

*Clovis Oncology, Inc. Derivative Litig.*, No. 2017-0222-JRS (Del. Ch.) (the "Delaware Action"). As Plaintiff admits, the allegations in this case are duplicative of those in the Delaware Action. (*See* ¶ 13 ("[S]ome of the allegations in this complaint are sourced directly from Vice Chancellor Slights' findings from the pleading standards at the motion of [sic] dismiss stage.").)

**IV.     This Litigation.**

On June 20, 2017, this action was stayed pending resolution of the motion to dismiss in the Delaware Action. (Dkt. No. 10.) The stay was lifted on October 22, 2019, and Plaintiff filed his Amended Complaint on December 23, 2019. (Dkt. No. 29.) In response to a minute order entered by this Court on January 27, 2020, suggesting that Plaintiff consider further amendment to clarify his claims (Dkt. No. 33), Plaintiff filed a second amended complaint on February 7, 2020 asserting two causes of action.

*a.    Breach of Fiduciary Duty*

The crux of the Complaint is that the Defendants breached their fiduciary duties because of their alleged failure to exercise proper oversight of the roci clinical trials and to ensure certain public disclosures—primarily securities filings at issue in *Medina*—were materially correct. (*See generally* ¶¶ 110–116 (Count II).) Specifically, the Complaint alleges that Defendants "misrepresented that: (i) rociletinib trials strictly adhered to RECIST; (ii) rociletinib was performing extremely well in trials; (iii) rociletinib had an 'impressive' and 'highly compelling' efficacy profile, with a 60% confirmed response rate; (iv) rociletinib had a strong safety profile, was 'well tolerated,' with minimal and 'easily managed' side effects; and (v) rociletinib would 'compete very effectively' against a similar experimental drug called Tagrisso, which was being developed by pharmaceutical giant AstraZeneca PLC." (¶ 5.)

Based on this, the Complaint contends, the Defendants "breached their duty of loyalty and good faith by allowing defendants to cause, or by themselves causing, the Company to misrepresent its business prospects for years, including with respect to the safety and efficacy of Clovis' primary drug in the Company's pipeline." (¶ 41.) Moreover, the Complaint contends the Defendants "failed to implement proper internal controls to ensure the Company followed proper and well-known drug testing and reporting standards, and to ensure material information was adequately and timely disclosed to the SEC and investing public." (*Id.*) Put differently, Plaintiff alleges that Defendants "either knew, were reckless, or were grossly negligent in not knowing that: (i) for years, Clovis had significant deficiencies in its drug trial controls; (ii) for years, Clovis was noncompliant with FDA rules and regulations concerning drug trials and trial data; (iii) for years, the Individual Defendants grossly misrepresented the efficacy and safety data of the Company's most important drug, rociletinib; (iv) the Company's private disclosures to the FDA were substantially different than the Individual Defendants' public disclosures in various SEC filings; (v) the Individual Defendants engaged in a highly risky and unethical scheme to artificially inflate the price of Clovis' stock; and (vi) the Individual Defendants' public statements about Clovis' business, including with respect to the Offering, were misleading." (¶ 113; *see also* ¶¶ 14, 21–33, 101, 107, 113, 114 (similar).)

  b. *Violations of Section 14(a)*

Plaintiff's limited allegations regarding the Proxy fall broadly into two categories. As described by Plaintiff, its "primary claim [is] that Defendants failed to disclose the underlying

improper conduct." (Plf. Ltr. at 2.)[3] This is a theory of pure omission. That is, these "primary" allegations are *not* that the Proxy made any false or misleading statements, but rather that it "failed to disclose" allegedly improper conduct by the Defendants. (¶ 14; *see also* ¶¶ 81, 101, 107 (same).) The "underlying improper conduct," however, is precisely the same conduct as that which forms the basis for Plaintiff's breach of fiduciary duty claim. (*Compare* ¶ 107 *with* ¶ 113 ("Clovis was noncompliant with FDA rules and regulations concerning drug trials and trial data;" Defendants "grossly misrepresented" "the efficacy and safety data of the Company's most important drug, rociletinib;" "the Company's private disclosures to the FDA were substantially different than its public disclosures in various SEC filings;" "the Individual Defendants engaged in a highly risky and unethical scheme to artificially inflate the price of Clovis' stock.").)

Second, the Complaint alleges that the Proxy "***misleadingly suggested*** that the Board: (i) maintained adequate oversight of the Company's risks and compliance with legal and regulatory requirements; (ii) ensured effective implementation of risk management; (iii) developed proper corporate governance guidelines and a code of business ethics; and (iv) ensured the Company's officers and directors adhered to Clovis' Code, which states that all officers, directors, and employees must 'conduct [themselves] in an ethical business manner' and must ensure '[f]ull, fair, accurate, timely and understandable disclosure in the reports required to be filed by the Company with the Securities and Exchange Commission.'" (¶ 81 (emphasis added); *see also* ¶¶ 14, 101, 107 (similar).) The actual language from the Proxy which the Complaint argues

---

[3] On January 17, 2020, Defendants filed a letter regarding their proposed motion to dismiss ("Def. Ltr."). Plaintiff filed his response on January 24, 2020 ("Plf. Ltr.").

constituted these "misleading suggestions," is limited to four statements regarding the roles of the Board, its committees, and Clovis' adoption of a code of business ethics:

- ***The audit committee and the full board of directors focus on the most significant risks we face and our general risk management strategies***. While ***our board of directors oversees our risk management***, company management is responsible for day-to-day risk management processes. ***Our board of directors expects company management to consider risk and risk management in each business decision, to proactively develop and monitor risk management strategies and processes for day-to-day activities and to effectively implement risk management strategies adopted by the audit committee and the board of directors.***

- Our audit committee oversees a broad range of issues surrounding our accounting and financial reporting processes and audits of our financial statements, and assists our board of directors by: (1) overseeing and monitoring the quality and integrity of our financial statements, ***our compliance with legal and regulatory requirements and our internal accounting procedures and systems of internal controls.***

- The nominating and corporate governance committee assists our board of directors in discharging its responsibilities relating to (1) developing and recommending criteria for selecting new directors, and identifying, screening and recommending nominees for election as directors; (2) screening and recommending to the board of directors individuals qualified to become executive officers; (3) ***evaluating our board of directors and its dealings with management***; (4) ***developing, reviewing and recommending corporate governance guidelines and a code of business ethics***; (5) ***generally advising our board of directors on other corporate governance and related matters***; and (6) ***overseeing non-financial compliance***.

- We have adopted the Clovis Oncology, Inc. Code of Business Ethics that is reviewed and published annually and contains the ***ethical principles by which our chief executive officer and chief financial officer, among others, are expected to conduct themselves when carrying out their duties and responsibilities***.

(¶ 80 (emphasis in original).)

## ARGUMENT

I. **Plaintiff Has Conceded That Clovis' Exclusive Delaware Forum Provision Governing Fiduciary Duty Claims Should Be Enforced If Its Section 14(a) Claim Is Dismissed.**

Clovis' Certificate of Incorporation expressly provides that any breach of fiduciary duty claim may be brought only in the Delaware Court of Chancery. (*See* Def. Ltr. at 3.) Plaintiff has

stated that "[i]n the event the Court were to eventually dismiss Plaintiff's Section 14(a) claim, Plaintiff will abide by the Company's exclusive forum provision." (Plf. Ltr. at 3, n.3.) Therefore, if this Court dismisses Plaintiff's Section 14(a) claim (and it should), Plaintiff's fiduciary duty claim should also be dismissed. *See* Fed. R. Civ. P. 12(b)(3).

## II. The Section 14(a) Claim Should Be Dismissed Because The Complaint Does Not Allege Any Materially False Or Misleading Statement In The Proxy.

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, the Complaint must "sufficiently allege[] facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007).

"To prevail on a claim for violation of Section 14(a) of the Securities Exchange Act of 1934, a plaintiff has the burden of proving by a preponderance of the evidence that (1) there was a material misrepresentation of fact made by the defendant in a proxy statement governed by the Act; (2) the misrepresentation caused injury to the plaintiff; and (3) the proxy solicitation was an essential link in the accomplishment of the transaction." *City Partnership Co. v. Lehman Bros., Inc.*, 344 F. Supp. 2d 1241, 1246 (D. Col. 2004). The Complaint neither pleads that the Proxy contained a false or misleading statement nor pleads loss causation.

### A. The Complaint Improperly Attempts To Bootstrap A State-Law Claim of Breach Of Fiduciary Duty Onto A Section 14(a) Claim.

As noted, Plaintiff's allegations fall broadly into two categories. First, the Complaint alleges that the Proxy "failed to disclose" alleged bad acts by the Defendants. (*See* ¶¶ 14, 81, 101, 107.) Second, the Complaint alleges that the Proxy "misleadingly suggested" certain facts

regarding Clovis' internal policies and controls. (*See* ¶¶ 14, 81, 101, 107.) Plaintiff's changes in the Second Amended Complaint do not alter the fundamental focus of the allegations. The changes are largely cosmetic, consisting primarily of repeating allegations made elsewhere in the Complaint regarding the Proxy's alleged omissions and "misleading[] assur[ances]" regarding the Board's oversight. (*See* ¶ 14; *see also* ¶ 107.) Critically, Plaintiff's amendments add no new factual allegations or identify any new alleged misstatements or omissions from the Proxy.

Neither the alleged "failures to disclose" nor the "misleading suggestions" of the Proxy are sufficient to sustain a claim under Section 14(a). Each is discussed, in turn, below.

> i. The Failure to Disclose Breaches of Fiduciary Duty Is Not Cognizable Under Section 14(a).

Plaintiff's claim predicated on an affirmative duty to disclose wrongdoing is expressly foreclosed by *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462 (1977) and its progeny. In *Santa Fe*, the plaintiff asserted a Rule 10b-5 fraud claim predicated on an alleged breach of state-law-imposed fiduciary duty in connection with a merger. *Id.* at 465–69. The Supreme Court held that breaches of fiduciary duty are not within the ambit of the federal securities laws and explained that it would not "federalize [a] substantial portion of the law of corporations" by recognizing a federal securities claim based on acts "which constitute no more than internal corporate mismanagement." *Id.* at 479 (quotations omitted). Extending the federal securities laws in this way "would be to bring within [ ] Rule [10b-5] a wide variety of corporate conduct traditionally left to state regulation" which "would overlap and quite possibly interfere with state corporate law." *Id.* at 478-79. That is precisely what Plaintiff is attempting here.

Relying on *Santa Fe*, courts have "consistently [] rejected" "efforts to dress up state-law claims in a Section 14(a) suit of clothes." *Field v. Trump*, 850 F.2d 938, 947 (2d Cir. 1988). As

the Ninth Circuit explained, the reason such claims are unsupportable under Section 14(a) is because "mismanagement, unadorned by self-dealing, is simply not material or otherwise within the ambit of the federal securities laws." *Gaines v. Haughton*, 645 F.2d 761, 779 (9th Cir. 1981), *overruled on other grounds by In re McLinn*, 739 F.2d 1395 (9th Cir. 1984).

*Gaines* is instructive on this point. There, the defendants paid millions of dollars in illegal bribes to foreign governments and then failed to disclose the payments in a proxy statement. *Id.* at 779. The Ninth Circuit held that this failure to disclose did not state a claim under Section 14(a), reasoning that such "allegations of simple breach of fiduciary duty/waste of corporate assets . . . [are] ***never*** material for [Section] 14(a) purposes." *Id.* at 776-77 (emphasis added). "Absent credible allegations of self-dealing by the directors or dishonesty or deceit which inures to the direct, personal benefit of the directors," "director misconduct of the type traditionally regulated by state corporate law need not be disclosed in proxy solicitations for director elections." *Id.* at 779. So too, here: the acts the Proxy allegedly failed to disclose are "misconduct of the type traditionally regulated by state corporate law." The failure to disclose them in a proxy statement therefore does not give rise to a cause of action under Section 14(a).

Following *Santa Fe* and *Gaines*, federal courts, including the District of Colorado, have consistently held that "a plaintiff may not 'bootstrap' a claim for internal corporate mismanagement or breach of fiduciary duty by alleging that the corporation or its directors failed to disclose that mismanagement or breach." *Andropolis v. Red Robin Gourmet Burgers, Inc.*, 505 F. Supp. 2d 662, 682-83 (D. Colo. 2007); *see also In re JPMorgan Chase Deriv. Litig.*, 2014 WL 5430487, at *18 (E.D. Cal. Oct. 24, 2014) ("mismanagement, unadorned by self-dealing, is simply not material or otherwise within the ambit of federal securities laws"); *Schwartzman v.*

*McGavick*, 2007 WL 1174697, at *12 (W.D. Wash. Apr. 19, 2007) ("Contrary to *Gaines* this allegation is little more than an attempt to present a breach of fiduciary duty claim as a Section 14(a) claim"); *Field*, 850 F.2d at 948 ("allegations that a defendant failed to disclose facts material only to support an action for breach of state-law fiduciary duties ordinarily do not state a claim under the federal securities laws"). This is supported by "overwhelming authority." *Gen. Elec. Co. v. Rowe*, 1992 WL 277997, at *10-11 (E.D. Pa. Sept. 30, 1992).[4]

Plaintiff attempts to distinguish *Field* and *Andropolis* on the grounds that "they involve a breach of fiduciary duty without any deception, misrepresentation, or nondisclosure." (Plf. Ltr. at 2.) This is simply false. In *Field* the plaintiff "alleged that the defendants had ***failed to disclose*** [] 'material facts'" regarding a proposed tender offer and merger. 850 F.2d at 946. Likewise, in *Andropolis*, the plaintiffs alleged that defendants had "violated Section 14(a) of the 1934 Act [] by ***making material omissions*** in the Company's proxy statement." 505 F. Supp. 2d at 666. Plaintiff's secondary argument—that the plaintiff in *Andropolis* "did not make allegations regarding management's review of internal controls" (Plf. Ltr. at 2)—is also wrong. Contrary to Plaintiff's mischaracterization, the entire "crux of Plaintiff's argument" in that case was that "Red Robin misstated that management had evaluated and approved the Company's disclosure procedures and internal reporting controls, and omitted to state that these systems

---

[4] *See also Gen. Elec. Co. v. Cathcart*, 980 F.2d 927, 931 (3d Cir. 1992) ("[A]bsent allegations of self-dealing, corporate directors have no duty to disclose management or breach of fiduciary duty in proxy materials"); *In re Am. Express Co. S'holder Litig.*, 840 F. Supp. 260, 267–69 (S.D.N.Y. 1993) ("Section 14(a) does not require that [] uncharged, unadjudicated charges of mismanagement be disclosed."); *In re Browning-Ferris Indus., Inc. S'holder Deriv. Litig.*, 830 F. Supp. 361, 369–70 (S.D. Tex. 1993) (dismissing Section 14(a) claim premised on non-disclosure of inadequate internal controls), *aff'd without opinion by Cohen v. Ruchelshaus*, 20 F. 3d 465 (5th Cir. 1994); *Kas v. Financial Gen. Bankshares, Inc.*, 75 F.2d 508, 513 (D.C. Cir. 1986); *Kademian v. Ladish Co.*, 792 F.2d 614, 622 (7th Cir. 1986).

were significantly deficient." 505 F. Supp. 2d. at 678. It was precisely because of these allegations that the court there held that the complaint "allege[d] no more than corporate mismanagement and, thus, do[es] not support a federal cause of action." *Id.* at 683.

Plaintiff's authorities are not to the contrary. *See In re Countrywide Fin. Corp. Derivative Litig.*, 554 F. Supp. 2d 1044 (C.D. Cal. 2008); *In re Wells Fargo & Co. S'holder Derivative Litig.*, 282 F. Supp. 3d 1074 (N.D. Cal. 2017). In *Countrywide*, the plaintiffs alleged that the proxy "touted the extraordinary financial results . . . achieved by management," without disclosing that those results were due to the company having "abandoned its underwriting standards, thus exposing itself to an undisclosed level of heightened risk." 554 F. Supp. 2d at 1076–77. These allegations, the court held, "clearly sound[] in fraud." *Id.* Similarly, in *Wells Fargo* the plaintiffs alleged that "Defendants knew of, but failed to disclose, a fraudulent business practice that put the company at material risk." 282 F. Supp. 3d at 1103.

Unlike in either of those cases, here there is no allegation that the Proxy fraudulently touted extraordinary financial results or failed to disclose a fraudulent business practice. To the contrary, Plaintiff goes to great lengths to explicitly disclaim any reliance on fraud. (*See* ¶ 79 ("Plaintiff's allegations with respect to the materially misleading statements in the Proxy are based solely on negligence; they are not based on any allegation of reckless or knowing conduct by or on behalf of these defendants, and they do not allege and do not sound in fraud."); ¶ 106 (similar).) Plaintiff's arguments that (1) the conduct Defendants failed to disclose in the Proxy is akin to the fraudulent conduct at issue in *Countrywide* and *Wells Fargo*, and (2) that none of its claims are based on fraud, are simply irreconcilable. Plaintiff cannot have it both ways.

Moreover, subsequent case law has limited *Countrywide* to a case where, by virtue of the pervasive and fraudulent business practices alleged in the complaint, the "directors' state-law violations were 'of secondary importance' to their Section 14(a) violations such that the Section 14(a) claims are independently material under *Gaines*." *JPMorgan*, 2014 WL 5430487, at *21. But that is not the case here. Instead, the alleged conduct that forms the basis for Plaintiff's Section 14(a) claim and breach of fiduciary duty claim is identical: that "Clovis had significant deficiencies in its drug trial controls;" "Clovis was noncompliant with FDA rules and regulations concerning drug trials and trial data;" that Defendants "grossly misrepresented" "the efficacy and safety data of the Company's most important drug, rociletinib;" that "the Company's private disclosures to the FDA were substantially different than its public disclosures in various SEC filings;" and that "the Individual Defendants engaged in a highly risky and unethical scheme to artificially inflate the price of Clovis' stock." (¶¶ 107, 113.) The Section 14(a) allegations merely have the added gloss that the Proxy "failed to disclose" this conduct. (¶ 107.) There is simply no distinction between the allegations forming the basis for Plaintiff's Section 14(a) claim, on the one hand, and alleged state-law violations, on the other. To survive a motion to dismiss, the allegations "must stand on their own feet as Section 14(a) violations," *JPMorgan*, 2014 WL 5430487, at *20, and here the alleged omissions from the Proxy simply do not.

      ii.      <u>The Complaint Does Not Allege Any Misstatements In the Proxy</u>.

Apart from the conduct Plaintiff alleges the Proxy "failed to disclose" (*see* ¶¶ 14, 81, 101, 107), the Complaint does not point to a single alleged false statement or misstatement in the Proxy. Rather, the Complaint alleges that the Proxy "misleadingly suggested" certain facts

regarding Clovis' internal policies and controls. (*See* ¶¶ 14, 81, 101, 107.) None of these "misleading suggestions" is sufficient to state a claim under Section 14(a).

As an initial matter, these statements are not actionable for the same reason the alleged omissions discussed above were not actionable: they all concern alleged mismanagement and lack of oversight by the Clovis Board which are properly the subject of a breach of fiduciary duty action, not a claim for violation of Section 14(a). Indeed, Plaintiff concedes as much, noting that these allegations are "merely secondary"—in other words, based explicitly on the fiduciary duty claim. (Plf. Ltr. at 2.) These allegations are thus all foreclosed by *Santa Fe*.

However, even assuming that these alleged "misleading suggestions" were distinct from Plaintiff's cause of action for breach of fiduciary duty (which they are not), they would still fail because they do not allege any actual misstatement. Indeed, the only actual statement the Complaint quotes in its Section 14(a) allegations isn't even in the Proxy. Instead, the Complaint quotes the Clovis Code of Ethics that the Proxy merely notes "we [Clovis] have adopted." (¶ 80; *see also* ¶ 81.) This simply cannot be the basis for a Section 14(a) claim. *In re Pfizer Inc. S'holder Derivative Litig.*, 722 F. Supp. 2d 453, 465 (S.D.N.Y. 2010) ("allegations regarding the nondisclosure of waiver or violations of the Code of Conduct [in a proxy statement] call for defendants to engage in precisely the sort of self-flagellation that courts have held is not required unless its absence renders any particular statement false or misleading.") As this Court has held, "a code of ethics is inherently aspirational; it simply cannot be that every time a violation of that code occurs, a company is liable under federal law for having chosen to adopt the code at all." *Andropolis*, 505 F. Supp. 2d at 686; *see also Schwartzman*, 2017 WL 1174697, at *12 ("[A]llegations that the proxy statement was false or misleading because the Directors

supposedly . . . departed from . . . [defendant's] code of ethics . . . are essentially allegations that the Directors failed to disclose alleged breaches of their fiduciary duties in the 2006 Proxy Statement, which are not sufficient under *Gaines* to support a Section 14(a) claim.").

The remaining "misleading suggestions" in the Proxy are all similar. (*See* ¶ 81 (Proxy "misleadingly suggested that the Board: maintained adequate oversight of the Company's risks and compliance with legal and regulatory requirements; (ii) ensured effective implementation of risk management; (iii) developed proper corporate governance guidelines and a code of business ethics").) As an initial matter, the Proxy actually stated that the board "oversees our risk management" and "expects company management to consider risk and risk management" (¶ 80), not that it would "maintain" or "ensure" proper risk management, as Plaintiff contends. (¶ 81.) This Court should reject Plaintiff's subjective characterization of the Proxy's plain language. *See Hutton v. McDaniel*, 264 F. Supp. 3d 996, 1018 n.10 (D. Ariz. 2017) ("Plaintiff has failed to cite to language describing the oversight as adequate. The Court does not read the sentence as ensuring 'adequate' oversight and, thus, disregards Plaintiff's subjective characterization of the sentence."). Moreover, the statements in the Proxy regarding the role of the Board and its committees are the type of "generalized, vague and unspecific assertions" which cannot form the basis for a Section 14(a) claim. *See id.* at 1018 ("[T]he statement that the Inventure Board 'regularly reviews' various aspects of Inventure's operations does not provide a specific representation of an objective fact . . . it is inactionable as mere puffery.").

### B. The Complaint Does Not Allege "Transaction Causation" Because The Only Transaction It Challenges Is The Re-Election Of Certain Clovis Directors.

Plaintiff seeks money damages based on certain unspecified corporate damages, but fails to allege any connection between the purported misrepresentations in the Proxy and any decision

made at the stockholder meeting. This mandates dismissal. The "essential link" standard requires that "the proxy statement at issue directly authorizes the loss-generating corporate action." *S.E.C. v. Mercury Interactive, LLC*, 2009 WL 2984769, at *4 (N.D. Cal. Sept. 15, 2009); *see also Bondiett v. Novell, Inc.*, 1998 WL 166243, at *3 (10th Cir. Apr. 7, 1998). Plaintiff argues that this standard is met because the Proxy authorized "the continued tenure of the offending directors [] and would allow the scheme to continue." (Plf. Ltr. at 3.) Plaintiff is simply wrong—such allegations are plainly insufficient to satisfy the essential link standard.

As the Third Circuit has explained, "the mere fact that omissions in proxy materials, by permitting directors to win re-election, *indirectly* lead to financial loss through mismanagement will not create a sufficient nexus with the alleged monetary loss . . . the appellees' re-election as directors did not create any cognizable harm because the shareholders' votes did not authorize the transactions that caused the losses." *General Elec. Co. by Levit v. Cathcart*, 980 F.2d 927, 933 (3d Cir. 1992) (citations omitted). Following this reasoning, the overwhelming weight of authority holds that "a complaint alleging generally that the mere election of directors was an essential link to the directors' subsequent wrongdoing does not satisfy Section 14(a)'s requirements." *In re Paypal Holdings, Inc. Shareholder Derivative Litig.*, 2018 WL 466527, at *4 (N.D. Cal. Jan. 18, 2018); *see also In re Diamond Foods, Inc. Derivative Litig.*, 2012 WL 1945814, at *7 (N.D. Cal. May 29, 2012) ("re-election of directors who have allegedly mismanaged the company is insufficient to meet the 'essential link' requirement of Section 14(a)"); *In re AGNC Investment Corp.*, 2018 WL 3239476, at *6 (D. Md. July 3, 2018) ("transaction causation mandates that the challenged conduct that caused the economic loss be an action authorized by shareholder vote, not later misconduct undertaken by the board").

Plaintiff cites to a number of cases that it argues "found the reelection of board members based on false or misleading proxy statements sufficient to establish an 'essential link' for purposes of a Section 14(a) claim." (Plf. Ltr. at 3.) But these cases did not hold that the mere reelection of directors, standing alone, was sufficient to satisfy the essential link standard. Rather, all but one involved directors accused of backdating stock options. *See In re Fossil, Inc.*, 713 F. Supp. 2d 644, 654–55 (N.D. Tex. 2010); *In re Maxim Integrated Prods., Inc. Derivative Litig.*, 574 F. Supp. 2d 1046, 1066 (N.D. Cal. 2008); *In re Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d 986, 1016 (N.D. Cal. 2007). In those circumstances, "because the proxies facilitated the election of directors and approval of stock option plans, they formed the essential link to the Board's continued diversion of company assets to its members." *In re Paypal*, 2018 WL 466527, at *4. Here, no backdated stock options are alleged to have been approved by the Proxy. The sole remaining case Plaintiff cites, *Countrywide*, is distinguishable for similar reasons. There, the re-elected directors were alleged to have "use[d] deceptive methods to achieve the performance measures that were the benchmarks of the 2005 and 2006 compensation plans." *Countrywide*, 554 F. Supp. 2d at 1077. There are no similar allegations here.

This case is more like *Paypal*, where "the Section 14(a) claim [was] premised on a single proxy, which apparently only solicited votes for the reelection of several directors." 2018 WL 466527, at *4. In those circumstances, the court held that the fact that "those individuals remained on the Board and subsequently presided over [] allegedly deceptive practices is thus insufficient to satisfy the 'essential link' requirement." *Id.* The same result should control here.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed for failure to state a claim upon which relief can be granted and because it was brought in an improper forum.

| | |
|---|---|
| */s/ Carrie E. Johnson* <br> Carrie E. Johnson <br> **BROWNSTEIN HYATT FARBER SCHRECK LLP** <br> 410 Seventeenth Street, Suite 2200 <br> Denver, CO 80202-4432 <br> Telephone: (303) 223-1100 <br> <br> Tariq Mundiya <br> Todd G. Cosenza <br> Charles D. Cording <br> **WILLKIE FARR & GALLAGHER LLP** <br> 787 Seventh Avenue <br> New York, NY 10019 <br> Telephone: (212) 728-8000 <br> tmundiya@willkie.com <br> <br> *Attorneys for Defendants Patrick J. Mahaffy, Daniel W. Muehl, Gillian C. Ivers-Read, Erle T. Mast, Andrew R. Allen, and Nominal Defendant Clovis Oncology, Inc.* | */s/ Jamie N. Cotter* <br> Jamie N. Cotter <br> **SPENCER FANE LLP** <br> 1700 Lincoln Street, Suite 2000 <br> Denver, CO 80203 <br> Telephone: (303) 839-3826 <br> jcotter@spencerfane.com <br> <br> Blake Rohrbacher <br> Robert L. Burns <br> Matthew W. Murphy <br> **RICHARDS LAYTON & FINGER, P.A.** <br> One Rodney Square <br> 920 North King Street <br> Wilmington, DE 19801 <br> Telephone: (302) 651-7700 <br> <br> *Attorneys for Defendants M. James Barrett, Brian G. Atwood, James C. Blair, Paul H. Klingenstein, Edward J. McKinley, Thorlef Spickschen, Keith Flaherty, and Ginger L. Graham* |

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 28, 2020, I electronically filed foregoing **DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** to the Clerk of the Court using the CM/ECF system which will send notification of such filing and service to all registered parties.

/s/ Paulette M. Chesson
Paulette M. Chesson, Paralegal
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202
303-223-1325

20359403